EMPRESA MARITIMA A VAPOR *v.* NORTH & SOUTH AMERICAN STEAM NAVIGATION CO.

*(District Court, S. D. New York.    May 10, 1883.)*

1. SECURITY FOR CLAIM—RULE 53 IN ADMIRALTY.
    Under rule 53 the respondents in a cross-libel should be required to give security where the vessel in the original libel is in custody, as well as where she has been released on bond or stipulation.

2. SAME—STAY OF PROCEEDINGS—DISCHARGE OF VESSEL.
    Where, under rule 53, the respondent is ordered to give security, if he is able to do so, he will not be allowed at his own mere option to submit to a stay of proceeding merely, and at the same time hold the libelant's vessel in custody indefinitely under the original libel. If the refusal to give security is willful, the court, after a reasonable time, may discharge the vessel upon the claimants' own stipulation, if it be clearly shown that the claimants are unable to give security to release her, but not otherwise; or it may order her to be sold.

In Admiralty.    Motion for security.
*Goodrich, Deady & Platt,* for libelants.
*Butler, Stillman & Hubbard,* for respondents.

BROWN, J.    On the twentieth of July, 1882, the respondents, a New Jersey corporation, chartered from the libelants, a Spanish corporation, the Spanish steamer Bellver, for service between New York and the West Indies, at the rate of £1,000 per month, with the right of renewal for a subsequent term.    The charterers took possession on the seventh of August, and continued her employment, under the charter-party, until February, 1883, when they renewed the engage-

ment for a further period of six months. By the terms of the charter-party the owners bound themselves to keep the ship and machinery in perfect order, and "guarantied to maintain the boilers in a condition to bear a working pressure of at least 65 pounds." The respondents kept the steamer in service, under the charter-party, until the twenty-first day of April, 1883, when, for an alleged breach of the above condition of the charter-party on the part of the owners in not maintaining a proper pressure, whereby her speed was materially diminished, as well as for other alleged breaches of the charter-party, the respondents threw up the charter and refused to employ her further; and, on the thirtieth of April, 1883, they filed a libel against the ship for damages for violation of the charter-party in the sum of $15,000. The steamer was arrested under process of this court, but has not been bonded, and she is still in the custody of the marshal. The libelants in the present case have appeared as claimants, and answered to the libel *in rem,* and, under the rules of this court, have moved for an immediate trial, to which they will be entitled upon the return of process.

On May 1, 1883, the libel in this case was filed by the owners of the steamer against the respondents, the charterers, *in personam,* to recover the sum of $19,222 damages for alleged breach of the charter-party by the respondents, being the whole amount of the hire of the ship for the remainder of the term of the charter, the same being declared by one of its provisions to be liquidated damages in case of breach. No answer has yet been filed in this suit.

The libelants in this suit now move for security under the supreme-court rule, No. 53, formerly 54, in admiralty, and that in default of such security being given the vessel be released from custody.

The question in litigation in the two suits is substantially the same, namely, whether there was any such breach of the terms of the charter-party, on the part of the owners, as authorized the charterers to terminate the contract. The case is, therefore, within rule 53, as I have recently held in the case of *Vianella* v. *The Credit Lyonnais,* 15 FED. REP. 637.

It is objected that the motion is premature on the part of the libelants, because the vessel in the suit *in rem* has not been bonded, but is still in custody; and because the present libelant, the claimant in that action, has not, as it is alleged, given security in that action.

The case of *The Bristol,* 4 Ben. 55, is referred to to sustain this point. I find nothing in that case, however, to support the objection.

That case decided that the motion could only be made in a cross-suit *in personam*, and could not be made in a cross-suit *in rem*, where the vessel had not been arrested nor any process served.

The objection now raised has no support, either in the language or the reasons of the fifty-third rule. The granting of the order, it is true, is to some extent discretionary, since, "upon cause shown," the court "may otherwise direct." From this it is clear that it was the intent of the rule that security should be given unless the respondents affirmatively show, the burden of proof being upon them, circumstances which would make the application of the rule unjust. The fact that the vessel is in custody and has not been bonded certainly does not make it unjust for the respondents to file security, according to the rule. The vessel while under arrest is itself security in the suit *in rem*, as BLATCHFORD, J., states in the case of *The Bristol*, cited above. In the present case the valuation put upon her in the charter, viz., £30,000, shows that the vessel is not only security, but security of the amplest kind, far higher than any personal security that could be required for the charterer's claim. The object of rule 53, I cannot doubt, was that in cases of cross-demands upon the same subject of litigation both parties should stand upon equal terms as regards security. It was designed, where the libelants in a suit *in rem*, through the arrest of the property, exact and obtain security for their own demand, that in a cross-suit *in personam* for a counter-claim in respect to the same subject of litigation, the defendants in the former suit should likewise be entitled to security for the payment of their demands, in case the decision of the court upon the point in controversy should be in their favor. The rule was designed to correct the inequality and injustice of the process of court *in rem* being used to obtain security in favor of one party, in reference to a single subject of dispute, while it was denied to the other. Where the security obtained by the libelant in the suit *in rem* is the vessel itself under seizure, which in this case is of great value, and where the libelant is a foreign corporation, having no tangible property here, the reasons for the application of the rule are specially urgent.

The order for security should, therefore, be granted. ————

It is claimed that the respondents may, at their own mere option, decline to furnish security, or, at least, delay doing so as long as suits their convenience, submitting, meantime, to a stay of their proceedings in the suit *in rem*, but still retaining the vessel in custody; and it is urged that the court cannot, under the rule, do more than

stay their proceedings if security is not filed.    Whenever the owners of the vessel arrested should be unable to bond her, the consequences of such a construction and application of this rule would be disastrous to all concerned, through the detention of the vessel during a stay of proceedings for an indefinite period.    In time she would be eaten up with expenses, or become worthless by decay; and meanwhile she would be of no advantage to any one.    In this case, by a temporary detention merely, a large loss would ensue, since the hire of the ship, as it appears from the charter-party, is worth nearly $5,000 per month.    Thus the rule itself, which was manifestly designed for the benefit of the owner of the vessel in his cross-action, would only serve, through the stay of proceedings and the detention of the vessel indefinitely, to increase greatly his loss and injury.    In practical effect the rule would be rendered nugatory at the libelant's option, since the owner would be compelled to waive the stay of proceedings in order to try the suit and get a release of his vessel. Such a construction and application of the rule would, therefore, thwart its object, and cannot be sustained.

The cross-suits, moreover, being upon one subject of litigation, and all the parties being before the court in each, they are to be treated as in effect one suit, (*The Eleanora,* 17 Blatchf. 88, 104;) and it is competent for the court to enforce its order for security, in case of any willful disobedience or neglect in complying with it, by any further appropriate order in either suit.    If the court may enforce its order by disallowing a party's claim or defense, it may, as a punishment for willful default, release a part of his security, especially as this would in time become worthless.    *The Virgo,* 13 Blatchf. 255, 257.

The charterers should have a reasonable time to file the security required; but they cannot be allowed to hold the vessel indefinitely in custody for their own security, upon their own mere option to submit to a stay of proceedings, instead of filing security as ordered.  The very retention of the vessel in the custody of the marshal, is itself in the nature of a continuous proceeding in the suit for the libelant's benefit, and I have no doubt of the duty of the court, in case of the respondents' refusal to furnish security within a reasonable time, if able to do so, to discharge the vessel from custody.

Where the respondents appear to have a meritorious case, and show circumstances proving their inability to give security under the rule, the court might, in its discretion, according to the circumstances, either deny the order for security altogether, or, on failure to give the

security required, order the vessel to be sold, or to be discharged upon the claimant's own stipulation without other security. That course would enable the suit *in rem* to proceed to a personal judgment against the owner on his own stipulation, (rule 21,) in case the original libelant should prove to be entitled to judgment on the merits of the controversy, just as in the cross-suit a personal judgment would be obtained against the respondents if the merits were found to be with the cross-libelants, and both suits would thus stand upon an equal footing. The principle of the admiralty that ships shall "plow the seas and not rot by the wall," will not suffer their detention during an indefinite stay of proceedings through the libelant's willful default. If the owners are unable to give bonds to release the vessel from arrest, the most suitable course would usually be to order a sale of the vessel. At all events, before any discharge of the vessel without security, except on proof of the original libelant's willful refusal to give the security ordered, the owners of the vessel must satisfy the court of their own entire inability to give bonds in the original suit for the release of the vessel, and that they do not pursue this course for the purpose of enhancing their claims for damages.

It is urged that the fifty-third rule places it in the power of the owner of the vessel arrested to embarrass the libelants through the assertion of large, fictitious, or unfounded claims in the cross-action, and thus require very large security or a stay of the libelants' suit. The rule itself furnishes a sufficient answer to this objection, in the discretion which it allows to the court in requiring security. If the counter-claim be unfounded, fictitious, or grossly exaggerated, it is for the respondents in the suit *in personam* to show this to the court upon the motion for security. In the present case, no facts are shown to sustain such a charge in reference to this counter-claim, except such as may be derived from the charter-party itself. The present libelants claim the entire hire of the vessel, without any deduction for the ordinary expenses of her trips, which would fall upon her owners; but no proof or suggestion, even, is made to the court as to the amount of these ordinary expenses, which might possibly be a legal deduction from the liquidated damages mentioned in the charter. The court has no basis, therefore, for reducing the security required.

An order may be entered requiring the respondents to file security in the usual form for the damages claimed in the cross-libel, and that all proceedings on the original libel be stayed until such security be given, except publication and return of the original process. If

such security is not filed within 10 days, the libelants can move for the release of the vessel, if so advised, when a proper final order can be made, according to any special circumstances that may then be made to appear.

_____

Upon a subsequent hearing on affidavits it appeared that the original libelant was wholly insolvent, and without other substantial assets than the claim in suit; that it could not give security, except, possibly, after consultation with and assistance from the various creditors for whose benefit the suit was promoted. It did not appear that the owners of the vessel or her captain could not give bonds for at least a considerable part of the claim against her, and the motion for discharge of the vessel was therefore denied. By consent, a stipulation on the part of the owner for the release of the vessel was agreed to be given for the whole amount of the claim, with surety to the extent of $10,000, and thereupon a stay of the original suit to be granted till further ordered.