### THE OWEGO.

(District Court, W. D. Washington, N. D. May 11, 1923.)

No. 7496.

1. **Maritime liens ⬅46—Lien not waived by permitting vessel to leave port.**
 A lien for supplies is not waived by permitting the vessel to leave the port.

2. **Admiralty ⬅53—Court without power to appoint receiver, unless authorized by statute.**
 A court of admiralty has not the characteristic jurisdiction of a court of equity, and is without power to appoint a receiver to operate a vessel in a suit in rem to enforce liens other than a preferred mortgage.

3. **Admiralty ⬅58—Claimant, who has not given security, cannot require security on cross-libel.**
 Claimant of a libeled vessel, who has not given security for her release, cannot, under admiralty rule 50 (267 Fed. xix), require libelants to give security to respond to a claim set up in a cross-libel.

4. **Admiralty ⬅53—Sale will be ordered to prevent loss by deterioration.**
 Where a claimant refuses to make deposit or stipulation for release of a libeled vessel, and there is a general deterioration of the vessel, a sale will be ordered, especially where some of the libelants are seamen claiming wages.

In Admiralty. Suit by the Johnson Iron Works, Dry Dock & Shipbuilding Company and others against the steamship Owego, Stephen

Flanders Cottle, claimant, with J. M. Rutherford and others as intervening libelants. On motion by claimant for appointment of receiver, and also to require libelants to give security. Both motions denied.

Basing his motion upon the libel of Johnson Iron Works, Dry Dock & Shipbuilding Company, a corporation, W. G. Coyle, Inc., Woodward, Wight & Co., Limited, the Gulf Ports Stevedore Company, Inc., and Rothschild & Co., Inc., and the answer and affidavit of Cottle, the master and part owner, and affidavit of Lang, Cottle moves the court to appoint a receiver for the Steamship Owego, authorized to operate the vessel pending the further order of the court. Johnson Iron Works, Dry Dock & Shipbuilding Company seek to recover an unpaid sum for material and supplies furnished to the Steamship Owego and F. N. Smith and S. F. Cottle, master. Coyle & Co. seek to recover for steam coal furnished to the vessel. Woodward, Wight & Co. seek to recover for marine supplies furnished to the vessel, "approved by the chief engineer of the vessel, and the authorization of the master." Gulf Ports Stevedoring Company seeks to recover "for stevedoring and longshoring, materials and services, and labor necessary and proper to the loading and stowing of said steamship." These materials were all furnished at New Orleans. Rothschild & Co., Inc., seek to recover for services performed by libelant for "said vessel and on board said vessel at port of Puget Sound in discharging cargo from said vessel."

An order consolidating all the libels with the libel in cause No. 7496 has been entered. Cottle, in answering the several libels, states in substance that he is the master of the ship; that the vessel after service upon the high seas, was abandoned as a cargo carrier and lying at the port of New Orleans, La.; that it was owned by Harris & Bros. Company, a Delaware corporation; that Cottle purchased the vessel from the owners, and as part of the purchase price executed and delivered to the owners "a preferred mortgage," which was duly recorded in the office of the collector of customs at the port of New Orleans on January 12, 1923; and that the materials and supplies, etc., for which a lien is asserted in the libels, was furnished by the several libelants with full knowledge of the said mortgage, and that during the reconstruction and equipment of the vessel the several libelants and other creditors by oral and written agreement waived their right of lien upon an assignment of the freight accruing upon the cargo, and arising through a charter from Kraus Lumber Company to the Steele Steamship Line, Inc., which advanced funds to the ship to enable it to make the trip to Seattle and return to Eastern ports, and that the profits should be paid to the several libelants and other creditors; that, because of the failure to advance the funds by the Steele Steamship Line the charter of Kraus Bros. Lumber Company was canceled, and that, due to the action of libelants "in accepting as security an assignment of freight money and permitting the steamship Owego to leave the port of New Orleans," libelants waived their remedy in rem, and "subordinated the same to the rights of the preferred mortgage herein mentioned"; that said conduct of libelants caused the ship to be subjected to liens for wages and obligations now asserted against the vessel in an amount undetermined, "and if the ship continues to lie idle irrevocable damages will be sustained to the claimant herein," and that the vessel has a charter value of $150 per day—and denies that the material, equipment, and supplies were furnished upon the credit of the vessel, and prays that the libel be dismissed, and the damages sustained be ascertained, and prays that process of attachment in due form may issue against the said Owego, etc. Cottle also moves for security to respond in damages by reason of unlawful attachment and further security. A sale of the ship is prayed by the intervening seamen.

Roberts & Skeel, of Seattle, Wash., for Johnson Iron Works.

Kerr, McCord & Ivey, of Seattle, Wash., for Woodward, Wight & Co. and W. G. Coyle & Co.

Bogle, Merritt & Bogle, of Seattle, Wash., for Gulf Ports Stevedore Co.

Wm. R. Gorham, of Seattle, Wash., for Rothschild & Co.

Allen, Martin & Wardall, of Seattle, Wash., for claimant.

Daniel Landon, Herchmer Johnston, Bausman, Oldham, Bullitt & Eggerman, and Stratton & Kane, all of Seattle, Wash., for interveners.

NETERER, District Judge (after stating the facts as above). [1] The agreement, Exhibit B, in the cross-libel, is not an assignment of freight money to the creditors, and does not operate as a waiver of lien. The Chas. A. Day (D. C.) 265 Fed. 422; The Hattie Thomas (C. C. A.) 262 Fed. 943. The Steele Steamship Company, Limited, is authorized by Cottle to act as agent for the steamship Owego, it having expended funds and anticipated further expenditures, and Cottle, not being able to pay and being desirous of protecting the Steele Steamship Company, did assign to such company the "freight money," etc., and when such company was reimbursed the "balance of such freight moneys are to be thereafter released." Nor does permitting the ship to leave the port of New Orleans waive claims for lien. The John G. Stevens, 170 U. S. 113, 18 Sup. Ct. 544, 42 L. Ed. 969; The Mee Too (D. C.) 280 Fed. 407; Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U. S. 1, 41 Sup. Ct. 1, 65 L. Ed. 97.

[2] The issue, however, is not before the court upon the merits of the claim, but upon the power of a court of admiralty to appoint a receiver on motion of the master or creditor other than mortgagee. A court of admiralty has not the characteristic power of a court of equity. The Eclipse, 135 U. S. 599, 10 Sup. Ct. 873, 34 L. Ed. 269. It cannot determine issues between parties as a court of conscience, and correct errors, declare or enforce trusts, or adjudicate matters of account, reform instruments, or issue injunctions (Paterson v. Dakin [D. C.] 31 Fed. 682), or take cognizance of mutual mistakes (Meyer v. Pac. Mail S. S. Co. [D. C.] 59 Fed. 923), unless brought before it as subsidiary to matters of which it has undoubted jurisdiction (U. S. v. Cornell Steamb. Co., 202 U. S. 184, 26 Sup. Ct. 648, 50 L. Ed. 987; Watts v. Camors, 115 U. S. 353, 6 Sup. Ct. 91, 29 L. Ed. 406; The Niki, 1 Amer. Marine Cas. 409). A court of admiralty, in its decisions upon the ultimate rights of parties, may be moved from consideration of conscience, justice, and humanity, sometimes, to mitigate against the severity of contracts and moderate exorbitant demands (Ben. Admr. § 261), but it is not a court of chancery and has not chancery jurisdiction. (Hughes, Admr. [2d Ed.] 399, 400).

The appointment of a receiver is not a right, nor a step in the determination of a right; it is merely an ancillary and incidental remedy; it is a means of preserving property for the satisfaction of substantive rights. Rights result only from the acts of the parties or by reason or operation of law. No doubt parties might agree in a maritime contract for the appointment of a receiver upon a given contingency, no other right intervening, or the Congress may provide, as it has in Mortgage Act June 5, 1920, 41 Stat. 1004, subd. L., for the appointment of a receiver. This act provides that:

"In any suit in rem in admiralty for the enforcement of the preferred mortgage lien, the court may appoint a receiver * * * to operate the mortgaged vessel."

This provision, however, has no relation to this action. This action is not an action to enforce the preferred mortgage lien. The mortgagee has not appeared—is not before the court. This is a proceeding in rem barren of a created right by contract or statute for the appointment of a receiver. The ship is the res in the possession of the marshal. An anomalous situation would arise if this vessel should be delivered over libelant's objection to a receiver to send it to a foreign jurisdiction and expose it to maritime liens to be enforced in another court, and this court would be left with a proceeding in rem without a res, and lien claimants in this jurisdiction without security, and be compelled to intervene in a foreign jurisdiction to preserve their rights. It cannot be asserted that a receivership would exempt the vessel from maritime liens. The Willamette Valley, 66 Fed. 565, 13 C. C. A. 635.

[3] The movant on his motion for security calls the court's attention to Admiralty Rules 8, 44, and 50 (267 Fed. ix, xvii, xix). These rules have no application. When cross-libel is filed (rule 50), and the claimant has given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims set forth in the cross-libel, unless the court, for cause shown, shall otherwise direct. Rule 44 provides that, when no provision is made, the court may regulate the practice deemed most expedient to the due administration of justice, not inconsistent with the admiralty·rules; and rule 8, that additional security may be required on motion where the bond has become insufficient. This court in The Frances L. Skinner, 248 Fed. 816, required additional bond; but it was established that the bond had become insufficient. Rule 12 (267 Fed. x), invoked by libelants, provides that, where the claimant has unreasonably neglected to make application for "due appraisement" and filing his bond or depositing in court money as the court shall order, then the court may on the application of either party, on due cause shown, order a sale of the ship, and require the proceeds thereof to be brought into court for deposit.

[4] Where claimant refuses to make deposit or make stipulation for the vessel's release, and there is general deterioration of the vessel a sale will be ordered. The Willamette Valley (D. C.) 63 Fed. 130. The seamen in this case clearly are entitled to their compensation. The controversy between the other parties can have no relation to them.

The application for appointment of a receiver must be denied, as also the motion for additional security, and the claimant is directed to show cause before this court on Monday, May 21, 1923, why the vessel should not be sold.