**PARTENREEDEREI WALLSCHIFF**

**v.**

**THE PIONEER et al.**

**THE WALLSCHIFF.**

**No. 13101.**

United States District Court,
E. D. Michigan, S. D.
March 22, 1954.

Foster & Meadows, Sparkman D. Foster, Detroit, Mich., Haight, Deming, Gardner, Poor & Havens, New York City, for libelant, claimant and cross-respondent.

McCreary, Hinslea & Ray, Cleveland, Ohio, Watson, Lott & Wunsch, Detroit, Mich., for defendant.

KOSCINSKI, District Judge.

Libelant, owner of the M/V Wallschiff, filed this libel in personam and in rem against The Cleveland-Cliffs Iron Company, as bareboat chartered owner of the Steamer Pioneer and against the vessel itself, charging negligence on the part of respondents and those in charge of the ship in causing a collision between the two vessels on October 2, 1953 which seriously damaged the Wallschiff and caused her to sink within a few minutes of the collision.

The Wallschiff is a German vessel; the Pioneer is owned by an Ohio corporation.

Under a salvage contract the Wallschiff was later raised and on December 12, 1953 it was delivered to the Great Lakes Engineering Works at Ecorse, Michigan, to be thereafter placed in drydock and temporarily repaired, pending decision as to future action.

This libel was filed on December 15. The Pioneer had not been attached, when the libel was filed, and probably was not then within the jurisdiction of this court. On December 18 a cross-libel, general appearance, and Claim of Ownership were filed on behalf of The Cleveland-Cliffs Iron Company, respondent and cross-libelant. On December 31 the Wallschiff was attached by the United States Marshal under the cross-libel filed by The Cleveland-Cliffs Iron Company as bareboat chartered owner of the Pioneer.

Presently before the court is libelant's motion to set aside and vacate the attachment under which the Wallschiff was arrested and seized, on the ground that libelant had not requested nor obtained security from respondent and under Rule 50 of the United States Admiralty Rules, 28 U.S.C.A. the cross-libelant is not entitled to the security which it is attempting to effect by attachment of the Wallschiff.

Rule 50 of the Admiralty Rules provides:

"Whenever a cross-libel is filed upon any counterclaim arising out of the same contract or cause of action

for which the original libel was filed, and the respondent or claimant in the original suit shall have given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims set forth in said cross-libel, unless the court for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given unless the court otherwise directs."

Libelant charges that respondent and cross-libelant, by seizing the Wallschiff and subjecting libelant to the filing of security for its release, is seeking by indirection to accomplish what it could not do directly, under the rule quoted.

It is argued on behalf of respondents and cross-libelants that Rule 50 cannot be invoked to defeat their right to seek enforcement and adjudication, by means of the cross-libel, of the maritime lien which arose as a result of the collision; that such liens are enforceable in a proceeding in rem in which a court acquires jurisdiction to proceed to a decree only when the res comes into the court's possession by seizure under adequate warrant of arrest; that release of the ship can only be effected, under admiralty rules governing all proceedings in rem and statutory provisions which the rules implement, by posting a bond or stipulation for value; and that release of the Wallschiff by the court in the present case without security would be a direct violation of the mandatory provisions of such rules and statutory provisions.

■ As a result of the collision each ship became entitled to a maritime lien upon the other for the damage she had sustained. The courts of the United States recognize liens in rem arising out of maritime collisions, and possess the procedure to enforce them, and will do so, even where a collision occurred in the territorial waters of a country whose law does not give such maritime lien against the offending vessel. The Kongsli, D.C.Me., 252 F. 267. This collision may have occurred in Canadian waters but the Canadian admiralty courts, just as our own courts, have universally followed the doctrine of The Bold Buccleugh, 7 Moore P.C. 267, which holds that the collision, as soon as it takes place, creates, as security for the damages, a maritime lien or privilege, jus in re, a proprietary interest in the offending ship, and which, when enforced by admiralty process in rem, relates back to the time of the collision. See E. C. Mayers' Textbook on Admiralty Law and Practice in Canada, p. 116.

To enforce the liens each party could proceed in rem against the alleged offending ship. Each party could also file an action in personam against the ship's owner, if it sought to hold the owner liable for damages, as well as the ship.

Present admiralty practice permits joinder of actions in rem and in personam. This the libelant did, although the Pioneer was not attached and libelant's action at present is one in personam.

Each party could also, by waiting for the other to initiate an action, assert its own claim in a cross-libel. The courts are not in agreement as to the effect of the admiralty rules on the filing of counter-claims or cross-libels. That filing of cross-claims was a common practice is indicated by the provisions of Rule 54 in Admiralty, prescribed by the Supreme Court as early as 1868, which are similar in context to those in Rule 53, and the present Rule 50, all of which cover the same subject-matter.

■ None of the three rules mentioned specifically say that only cross-libels of a particular character "may" be filed. By use of the language, common in all three rules mentioned,— "Whenever a cross-libel is filed", they recognize the established practice of filing cross-actions, but it may be that they attempt to limit the character of cross-libels which are permissible. Such limitation by these rules is at least suggested in Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629, 639, 44 S.Ct. 220, 68

L.Ed. 480, wherein the court holds that the new phases introduced in Rule 50 (as compared to former Rule 53) were not designed to introduce any new practice concerning cross-libels; that their purpose was to formulate the practice which had become settled; and that this is true of those relating to the giving of security, *as it is of those concerning the character of the claims which may be asserted by means of a cross-libel.* (Emphasis supplied.) Numerous cases are cited in the footnote on page 640 of 263 U.S., 44 S.Ct. 220, all of which had been examined; court decisions in many of these discuss the type of cross-libel which is permitted to be filed under Rule 50 and former Rule 53 and thereby assume that the character of a permissible cross-libel is governed by those Rules.

Be it as it may, whether the "character" of a cross-libel is determined from old admiralty practice or the admiralty rules, cross-libels in personam as well as those in rem have been recognized for many years, regardless of the nature of the original libel, if the cross-libel arose out of the same cause of action for which the original libel was filed and if the parties were the same. A great many other cases, in addition to those cited in the Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboat Co. case, supra, were studied, but none present a state of facts in which a cross-libel, both in personam and in rem, was filed where the original libel was in personam. If this type of cross-libel, which the instant case involves, be unorthodox, the court fails to discern any reason why it should not be permitted; the parties are the same; the claims asserted in the cross-libel arose out of the same cause of action for which the original libel was filed; the cross-libelant could resort to the same relief in an independent action in the same jurisdiction; it could do so by filing the original libel instead of requesting it in a cross-libel; it appears logical that the entire controversy should be disposed of in one action, without multiplicity of suits. Nor has libelant objected to the character of the cross-libel filed as it has filed both an appearance for the owner and a Claim of Ownership of the Wallschiff.

█ It is fundamental that jurisdiction of the proceedings in rem to enforce a maritime lien is acquired only by actual seizure of the res, charged with the lien.

█ By statute, Title 28 U.S.C.A. § 2464, claimants who desire the release of a vessel are required to post a bond or stipulate as to the amount. Admiralty rules governing all proceedings in rem, particularly Rule 12 which implements the above statute, provide that after a ship is arrested it may only be released to the owner, known in the proceedings as the "claimant", on an appraisal of its value which is to be had under the direction of the court, on depositing in court an equivalent sum of money or by giving a stipulation for a like amount with sufficient sureties or an approved corporate surety. If the prohibition against the release of a vessel, without security, is mandatory by the statute mentioned, in all proceedings in rem, it would apply to all actions in rem, in the opinion of this court, whether it is stated in an original libel or a cross-libel. In order to bring its in rem matter under the jurisdiction of the court, the cross-libelant properly caused the arrest of the ship, and its release, unless affected by Rule 50, is subject to the mandates of the statute, cited above, and Rule 12.

█ Although one of the purposes of Rule 50 may be to limit the character of permissible cross-libels, its principal purpose is to place parties on an equal basis before trial, insofar as security is concerned. Washington-Southern Nav. Co. v. Baltimore & Philadelphia Steamboat Co., supra, 263 U.S. at page 638, 44 S.Ct. 220; Eastern Transp. Co. v. U. S., D.C.N.Y.1951, 98 F.Supp. 36.

It is stated in Benedict on Admiralty, Sixth Ed., Vol. 2, Sec. 331, that Rule 50 in its present form has no application unless the respondent or claimant in the original suit, that is, the cross-libelant,

has given security to respond in damages and has given it under compulsion to obtain the release of a vessel or of property under attachment. Only where the original proceeding was in rem, or in personam with clause of foreign attachment, can the case be one in which the cross-libelant gave security and so is entitled, under the present rule, to demand it, for, if the original cause is an ordinary action in personam, security is not required of the respondent therein. The rule obviates the inequality of using process in rem or a foreign attachment to obtain security in favor of one party while denying it to the other in reference to a single subject of controversy.

Sec. 369 of the same volume contains this statement: A party who brings a libel in rem, and exacts a stipulation for value from his adversary should, upon being in his turn subjected to a cross-libel, give a stipulation for value to his adversary; and proceedings under the original libel may be stayed until he does so. The entire matter, however, rests in the full discretion of the court. City of Beaumont, 4 Cir., 8 F.2d 599, 1925 A.M.C. 1521; The Acushnet and Elzey, E.D.N.Y., 1933 A.M.C. 687.

■ Had respondent and cross-libelant, rather than libelant, taken the initiative in filing this action and asserted its claim in personam and in rem in a libel rather than a cross-libel, the situation would not only be one in which Rule 50 unquestionably applied but which promulgators of the Admiralty Rules specifically had in mind when they adopted the Rules. Obviously, in such a situation, as in the one now actually before the court, the in rem phase of the libel would have for its object the enforcement of the maritime lien which owners of the Pioneer acquired as a result of the collision. The court, on application of the cross-libelant in such case, could order the libelant to furnish security under Rule 50. This would also be true if the owner of the Pioneer, in addition to filing a cross-libel in personam in the present action, instituted a

separate in rem proceeding. But in either case the owners of the Wallschiff could only insist on cross-security. Only where a libelant fails to furnish security and, after submitting to a stay of proceedings, by prolonged inaction attempts to hold claimant's vessel for an unreasonably long time, can a court, on claimant's own stipulation, discharge the vessel, upon a clear showing that claimants are unable to give security to release her. Empresa Maritima a Vapor v. North & South American Steam Nav. Co., D.C.N.Y., 16 F. 502.

Diligent search of authorities, old and new, produced the decision rendered in 1870 in the case of The Bristol (The George S. Brown), 4 Ben. 55, Fed.Cas. No.1,889. Two cases were involved. The first was a suit in rem by the owner of the bark against the steamer, involved in collision with it, to recover for the damages sustained in the collision. The claimants in this case, as owners of the steamer, filed a libel in rem against the bark, to recover their damages. Their libel sets forth the filing of the libel against the steamer and states that the second libel is a cross-libel arising out of the same cause of action for which the first libel was filed. They then moved that all proceedings on the first libel be stayed until security shall be given, upon the second libel, for the bark. At the time this matter was determined Rule 54 was in effect. This rule is similar in language to Rule 53, which was amended by the present Rule 50. The court held that the Supreme Court did not intend, in its opinion, to give the court jurisdiction of the second libel, by the 54th Rule, as one in rem against the bark, without a seizure of the bark within the District. This decision is cited in the 2A Federal Digest, Admiralty, ⬥44, p. 516, for the proposition that Rule 50 was not intended to give jurisdiction on a cross-libel in rem without seizure of the vessel.

■ Various liberalities have been introduced into admiralty practice since adoption of the admiralty rules, par-

ticularly as to method of pleading and cross-pleading, but it is the opinion of this court that they do not dispense with necessity of posting bond or security for value, to obtain release of a ship held under a warrant of arrest in a proceeding in rem, and certainly Rule 50 cannot be so interpreted.

■ A grant of the relief which libelant seeks would afford a privilege to the German owner of the Wallschiff, without substitution of security for the vessel, to move it not only out of this jurisdiction but beyond the territorial limits of the United States, beyond the reach of process issuing out of any American admiralty court. If, upon a final determination of this cause, the Wallschiff should be found responsible for the collision, the only remedy available to cross-libelant would be a personal judgment without any personal property or assets in this country available to satisfy the judgment.

Rule 50 reposes some discretionary power in the court to grant or deny cross-security in cases warranting exercise of such discretion. In view of the present more liberal practice in admiralty, it would seem that the spirit of Rule 50 would not be violated by allowing cross-security to libelant, although the rule specifically refers to a cross-libelant rather than a libelant, as the one who can demand it. Perhaps the rule has never been so interpreted because the problem has never been presented for decision. Since the purpose of the rule is to put the parties on an equal basis as to security, the court would be inclined to entertain a request for cross-security. This proceeding, however, is not an application for cross-security but a demand for release of the ship, without filing bond or stipulation for value. Libelant has failed to show that it is entitled to such relief.

For reasons herein stated It Is Ordered that libelant's motion to set aside and vacate the attachment under which the M/V Wallschiff was arrested and seized be and it is hereby denied.