**FLOTA MARITIMA BROWNING DE CUBA, SOCIEDAD ANONIMA, Libelant,**

v.

**MOTOR VESSEL CIUDAD DE LA HABANA, her Motors, Tackles, etc.,**

and

**Banco Cubano Del Comercio Exterior, succeeded by Banco Para El Comercio Exterior, De Cuba, Respondent.**

**BANCO PARA EL COMERCIO EXTERIOR, DE CUBA, successor to Banco Cubano Del Comercio Exterior, Cross-Libelant,**

v.

**FLOTA MARITIMA BROWNING DE CUBA, SOCIEDAD ANONIMA, Cross-Respondent.**

Adm. No. 4096.

United States District Court
D. Maryland.

Aug. 16, 1965.

14. United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, 363 U.S. p. 585, 80 S.Ct. p. 1354.

Ober, Williams & Grimes and William A. Grimes, Baltimore, Md., for libelant and cross-respondent.

Niles, Barton, Gans & Markell, Baltimore, Md., Rabinowitz & Boudin, New York City, Robert H. Williams, Jr., Baltimore, Md., and Leonard B. Boudin, New York City, for respondent, claimant and cross-libelant.

THOMSEN, Chief Judge.

This case is now before the Court on (A) a motion under Admiralty Rule 12 to sell the M.V. Ciudad de la Habana, filed by libelant, supported by intervening libelants and by the Marshal, and opposed by respondent Banco and claimant Republic of Cuba, (B–1) a motion by Banco, as respondent and cross-libelant, to require security from Flota, as libelant and cross-respondent, and (B–2) a motion by claimant to require the Marshal to restore the vessel to her condition at the time of arrest, or to post or obtain from libelant a bond to secure such restoration, or in default thereof to release the vessel to claimant.

The background facts are set out in the previous opinions in this matter, 181 F.Supp. 301 (1960), 218 F.Supp. 938 (1963), aff'd 4 Cir., 335 F.2d 619 (1964). They will be only briefly summarized in this opinion.

*Facts*

The libel in this cause was filed on or about June 22, 1959. Pursuant thereto the vessel was arrested by the Marshal and remains in his possession. Exceptions to the libel for lack of jurisdiction over the subject matter were filed by the vessel and Banco on August 20, 1959. The exceptions were sustained with leave to amend, and an amended libel was filed on October 9, 1959. Exceptions to the amended libel, exceptive allegations and a motion to decline jurisdiction were filed by the vessel and Banco on November 23, 1959, and were denied in an order filed February 19, 1960. See 181 F.Supp. 301.

A claim by the Republic of Cuba, as owner of the vessel, was filed on October 27, 1960, and the next day it filed an answer to the libel, in which it made no claim of sovereign immunity. No security to release the vessel was posted and no other action of any sort was taken by claimant Republic until May 11, 1962.

Meanwhile, respondent Banco filed a cross-libel and complaint against Flota on April 27, 1961, seeking damages totalling $457,500. Flota filed its answer to the cross-libel on August 11, 1961.

On May 11, 1962, the Republic of Cuba, through the Czechoslovak Ambassador, filed a plea and motion for sovereign immunity. The plea and motion were denied by order of this Court dated August 6, 1963. 218 F.Supp. 938. That order was affirmed by the Fourth Circuit on July 14, 1964. 335 F.2d 619. A motion by the Czechoslovak Ambassador, acting for the Republic of Cuba, for leave to file a petition for a writ of prohibition and/or a writ of mandamus directed to this Court was denied by the Supreme Court of the United States on April 25, 1965. Duda, Ambassador of Czechoslovak Socialist Republic v. United States District Court for the District of Maryland, 380 U.S. 970, 85 S.Ct. 1347, 14 L.Ed. 2d 282.

The vessel is now and has since October 1962 been lying in the dead ship anchorage in Baltimore Harbor. Before that she was in the Maryland Shipbuild-

ing and Drydock Co. yard, where she was arrested. She is subject to deterioration and decay, vandalism and pilferage, and has been and is deteriorating. Neither the Republic of Cuba nor anyone on its behalf has ever sought an appraisal of the vessel or deposited any money or stipulation to secure her release or to insure her safety during the pendency of these proceedings.

This Court, on November 4, 1963, authorized its Marshal to borrow not over $1,000 for the purpose of making necessary repairs to the vessel, and again on December 3, 1964, authorized the Marshal to arrange for the performance of other work necessary to preserve the vessel at a cost not to exceed $600.

Intervening libels against the vessel have been filed by several United States corporations and a partnership which furnished repairs, supplies and services to the vessel.

Libelant and intervening libelants have been prevented from prosecuting their claims against the vessel by the various motions filed by respondent Banco and by claimant Republic and by the difficulties which proctors for Banco and for claimant Republic have experienced in getting instructions from their clients. No unreasonable delays can properly be charged to libelant or to intervening libelants.

On June 9, 1965, libelant filed an application for sale of the vessel under Admiralty Rule 12. This application was supported at the hearing by intervening libelants and by the Marshal because of the condition of the vessel.

On June 29, 1965, cross-libelant Banco and claimant Republic filed a "motion," which was explained and amended at the hearing to constitute two motions: (1) on behalf of cross-libelant Banco, that the Court direct the cross-respondent (the libelant Flota) to give security, pursuant to Admiralty Rule 50, to respond in damages to the claims set forth in the cross-libel of Banco in such amount as the Court may direct and, if the cross-respondent fails to give such security, to direct the Marshal to release the vessel to the claimant; (2) on behalf of claimant, Republic of Cuba, that the Court direct the Marshal to restore the vessel to the condition in which she was on June 29, 1959, the date of her arrest, or in the alternative, to post a bond in the penal sum of $600,000, or to secure the posting of such bond by the libelant as security for such restoration, and in default thereof to direct the release of the vessel to claimant.

Two days later, on July 1, 1965, Dr. Jan Snobl, Charge d'Affaires ad Interim of the Czechoslovak Socialist Republic, purporting to appear specially on behalf of claimant, Republic of Cuba (despite the previous general appearance and answer to the libel filed by proctors for the Republic of Cuba as claimant in October 1960), filed a plea of sovereign immunity and a motion for sovereign immunity, to prevent the sale of the vessel. The plea and motion make substantially the same arguments which were made in the plea and motion asserting exemption of the vessel from seizure, which were filed by the Czechoslovak Ambassador on behalf of the Republic of Cuba in 1962. Those arguments were rejected by this Court and by the Fourth Circuit, 218 F.Supp. 938, 335 F.2d 619. They were presented to the Supreme Court in support of the Ambassador's motion for leave to file a petition for a writ of prohibition and/or a writ of mandamus, which was denied, 380 U.S. 970, 85 S.Ct. 1347, 14 L.Ed.2d 282. The Secretary of State of the United States has never suggested to the Court that the M.V. Ciudad de la Habana was immune from seizure or would be immune from execution.

*Discussion*

Since the question whether libelant, as cross-respondent, should be required to give security to respond in damages to the cross-libel may affect the question whether the vessel should be sold, the issue of cross-security will be discussed first.

Rule 50 provides:

"Whenever a cross-libel is filed upon any counterclaim arising out of the same contract or cause of action

for which the original libel was filed, and the respondent or claimant in the original suit shall have given security to respond in damages, the respondent in the cross-libel shall give security in the usual amount and form to respond in damages to the claims set forth in said cross-libel, unless the court for cause shown, shall otherwise direct; and all proceedings on the original libel shall be stayed until such security be given unless the court otherwise directs."

Libelant contends that since cross-libelant Banco (respondent in the original libel) has filed an answer to the libel but has not given any security to respond in damages to the libel, Banco is not entitled to demand security from libelant as cross-respondent. On the other hand, Banco contends that the seizure of the vessel amounts to the giving of security whether or not the vessel is thereafter released by the giving of security. The answer to Banco's contention depends upon the proper construction of Rule 50, as to which the few opinions dealing with the question are conflicting and unclear.

There is one Supreme Court case in point, Washington Southern Co. v. Baltimore Co., 263 U.S. 629, 44 S.Ct. 220, 68 L.Ed. 480 (1924), decided shortly after Rule 50, amending and replacing former Rule 53, was adopted. The specific question certified to the Supreme Court by the Third Circuit in that case was whether Rule 50 "empowers the District Court to stay proceedings in the original suit until the original libelant shall have given security to respond to the counterclaim, in a case where the original libel was *in personam* and the original respondent (the cross-libelant) has given the security voluntarily; that is, of his own motion and without compulsion." 263 U.S. at 631, 44 S.Ct. at 220. The Supreme Court answered that question "No," but in the course of the opinion Mr. Justice Brandeis, speaking for a unanimous Court discussed the historical background and purpose of Rule 50

and some of the situations in which it might be applied, pp. 631–639, and concluded, pp. 639–640, 44 S.Ct. p. 224: "The new phrases introduced in rule 50 were not designed to introduce any new practice concerning cross-libels. Their purpose was to formulate the practice which had become settled. This is true of those relating to the giving of security, as it is of those concerning the character of the claims which may be asserted by means of a cross-libel."

In the course of the historical discussion showing the "practice which had become settled," Mr. Justice Brandeis said, pp. 638–639, 44 S.Ct. p. 223: "Neither was rule 53 in terms limited to suits where the original libelant had made an arrest or attachment. But, although it remained in force, unmodified, for more than half a century, no reported case discloses that a stay was ordered under it, except where the original respondent had been obliged to give security in order to obtain release of the ship or of attached property. Here, as in England, the purpose of the provisions was declared to be to place the parties on an equality as regards security. And under it, security to satisfy the counterclaim could not be exacted by means of a stay, unless the original libelant had compelled the giving of such security to satisfy his own claim."

Libelant in the instant case argues that the quoted language indicates clearly that the Court believed the settled practice to be that no stay or cross-security could be required "except where the original respondent had been obliged to give security in order to obtain release of the ship or of attached property." However, a footnote to that statement in the opinion of the Supreme Court cites, inter alia, Empresa Maritima a Vapor v. North & South American Steam Navigation Co., S.D.N.Y., 16 F. 502 (1883), in which Judge Addison Brown had held that under old Rule 53 the respondents in a cross-libel should be required to give security where the vessel in the original libel is in custody, as well as where she has been released on bond or stipulation.

In The Evangeline, S.D.N.Y., 36 F.2d 426 (1929), where the libelant attaching the ship was without assets, and it was claimed by the owner that the claims in the libel were greatly inflated as a result of knowledge of the financial distress of the owner for the purpose of bringing about a sacrifice sale of the ship, and the owner was unable to furnish bond sufficient to lift the attachment, the Court held that the owner was entitled to security from the libelant under Admiralty Rule 50. The Court followed The Empresa, supra, believing it to have been approved by the Supreme Court in Washington-Southern, supra. In Central American S & T Corp. v. Mercantile Ship R. Co., E.D.N.Y., 73 F.Supp. 779 (1947), where a similar situation was presented, the Court held tersely that the cross-libelant's right to security "is clear beyond any doubt."

On the other hand, the Fifth Circuit reached the opposite conclusion in Pan American Shipping Corp. v. Maritima Columbiana, Limitada, 5 Cir., 193 F.2d 845 (1952), relying on Washington-Southern, supra, The Owego, W.D.Wash., 289 F. 263 (1923), The City of Beaumont, 4 Cir., 8 F.2d 599 (1925), and 2 Benedict on Admiralty, 1940 ed., by Knauth, sec. 331, which states: "The rule in its present form has no application unless the respondent or claimant in the original suit, i. e., the cross-libelant, has given security to respond in damages and has given it under compulsion to obtain the release of a vessel * * *."

In The City of Beaumont, supra, the Fourth Circuit held that Rule 50 does not require that a libel be dismissed because of libelant's unwillingness or inability to give bond to meet the demand asserted by claimant in a cross-libel, after having given security in the original libel, and that the Court has full discretion to determine whether it is practicable and just for libelant to give such security. Judge Waddill, speaking for the Court, discussed Washington-Southern and stated that the purpose of Rule 50 "was manifestly to place the parties, the libelant and cross-

libelant, on an equality regarding security, as far as the same could be accomplished; but it never meant to do more than could reasonably and lawfully be done to that end, within the discretion of the court, under carefully prepared rules prescribing the rights of the parties litigant and seeking to safeguard and preserve the same." 8 F.2d at 601.

It is not necessary in this case to decide all of the questions raised by Rule 50. It is sufficient to say that in this Court's opinion the failure of a claimant to post security to release a vessel which has been seized under a libel in rem does not per se prevent such claimant, who is usually the respondent as well, from obtaining cross-security under Rule 50 from a libelant against which it has filed a cross-libel in a cause of action arising out of the same contract or cause of action. Whether such security should be required, however, and the amount of such security, if required, is always in the discretion of the Court, "for cause shown."

In the instant case a number of factors enter into the decision whether such security should be required. One is the long delay of respondent Banco, the cross-claimant, in demanding such security, during which period the vessel has deteriorated. It should be noted that in this case respondent and claimant are not the same, and libelant argues that since respondent does not own the vessel, none of its property is being held as security. In another case that fact alone might be controlling, but in this case claimant Republic owns respondent Banco and, in view of the ultimate decision herein, it is not necessary to base any conclusions on the fact that the vessel is not owned by respondent. Nevertheless, the fact that claimant Republic has been and still is claiming sovereign immunity for the vessel is a factor which militates against counter-security, since such claim might have eliminated libelant's security, if claimant had prevailed in its plea, and may still do so if the Secretary of State suggests that the vessel is immune from execution.

Another factor in this case is the presence of the intervening libels. No counterclaim has been made against intervening libelants, and they cannot be required to give security. So long as their claims are undisposed of, the Court could not properly release the vessel to claimant, unless claimant or respondent gives security, which neither of them has ever been willing to do.

■ Under all the circumstances the Court concludes that it should exercise its discretion against requiring libelant to post counter-security, and against releasing the vessel to claimant for lack of such counter-security.

Proctors for respondent Banco and claimant Republic concede that whether a Court should enter an order directing the judicial sale of a vessel under Admiralty Rule 12 is discretionary with the Court. They rely principally upon their claim of sovereign immunity, which has been denied by the Fourth Circuit, 335 F.2d 619, and implicitly by the Supreme Court in denying the motion for leave to file a petition for a writ of prohibition and/or a writ of mandamus, 380 U.S. 970, 85 S.Ct. 1347. It is true, as respondent and claimant argue, that if the Secretary of State should suggest to the Court that the M.V. Ciudad de la Habana is immune from execution, such suggestion would be binding upon the Court. But the Secretary has refrained from taking such action. See discussion in footnote 10, 335 F.2d at 623–624.

Admiralty Rule 12 provides:

"Where any ship shall be arrested, the same shall, on the application of the claimant, be delivered to him either on a due appraisement, to be had under the direction of the court, or on his filing an agreement in writing to that effect signed by the parties or their proctors of record, and on the claimant's depositing in court so much money as the court shall order, or on his giving a stipulation for like amount, with sufficient sureties, or an approved corporate surety, conditioned as provided in the foregoing rule; and if the claim-ant shall unreasonably neglect to make any such application, then the court may, on the application of either party, on due cause shown, order a sale of such ship, and require the proceeds thereof to be brought into court or otherwise disposed of."

■ The principle was established many years ago that "where claimant refuses to make a deposit or make stipulation for the vessel's release, and there is a general deterioration of the vessel a sale will be ordered. The Willamette Valley (D.C.) 63 Fed. 130." The Owego, W.D.Wash., 289 F. 263, 266 (1923).

Claimant Republic argues that in view of its continuing claim of sovereign immunity, it was under no obligation to cause the release of the vessel, by stipulation or deposit; that it has not unreasonably neglected to make such application for the release of the vessel; but on the contrary, that libelant has been guilty of laches in delaying six years before seeking the sale of the vessel and in failing to prosecute this suit.

The facts do not support this argument. The claim for immunity has been denied, and claimant has still made no application for release of the vessel by stipulation or deposit. Libelant has not been guilty of laches, as suggested by claimant; the delays have been caused by respondent and claimant and by libelant's acceding to their repeated requests for further time to obtain instructions from their clients.

■ In view of the danger of serious deterioration of the vessel, and of danger to other vessels in the harbor, the M.V. Ciudad de la Habana should be sold.

■ The same considerations and authorities which show that the vessel should be sold show that the Marshal should not be required to restore the vessel, nor to post or obtain from libelant a bond to secure such restoration, nor to release the vessel to claimant.

Counsel should agree upon a proper order.