**FLOTA MARITIMA BROWNING DE CUBA, SOCIADAD ANONIMA**

v.

**MOTOR VESSEL CIUDAD DE LA HABANA, her Motors, Tackle, etc.**

and

**Banco Cubano Del Comercio Exterior, succeeded by Banco Para El Comercio Exterior, De Cuba.**

**BANCO PARA EL COMERCIO EXTERIOR, DE CUBA, Successor to Banco Cubano Del Comercio Exterior, Cross Libelant,**

v.

**FLOTA MARITIMA BROWNING DE CUBA, SOCIADAD ANONIMA,**
Cross Respondent.

Adm. No. 4098.

United States District Court
D. Maryland.

July 1, 1963.

---

William A. Grimes and Ober, Williams, Grimes & Stinson, Baltimore, Md., for libelant.

Semmes, Bowen & Semmes and Venable, Baetjer & Howard, Baltimore, Md., for intervening libelants.

Leonard B. Boudin and Rabinowitz & Boudin, New York City, and Niles, Barton, Gans & Markell, Baltimore, Md., for movant.

THOMSEN, Chief Judge.

The Plea of Sovereign Immunity and Motion for Sovereign Immunity, filed herein on May 11, 1962, by the Czechoslovakian Ambassador on behalf of the Republic of Cuba (movant) raises questions of: (1) res judicata and collateral estoppel, (2) the nature and extent of sovereign immunity in the United States today, and (3) waiver of sovereign immunity by lack of timely assertion and by affirmative acts of the Republic of Cuba.

The original libel was filed herein on June 22, 1959, and an amended libel on October 9, 1959, by Flota Maritima Browning de Cuba, S.A. (libelant) in rem against the motor vessel Ciudad de la Habana, her motors, tackle, etc., and in personam against Banco Cubano del Comercio Exterior (Banco), with a clause of foreign attachment, seeking damages for the alleged breach of two lease-purchase contracts, each of which covered several vessels. On November 3, 1959, the vessel and Banco, appearing specially, filed exceptions, exceptive allegations and a motion to decline jurisdiction, raising the points set out in note 1 below. No question of sovereign immunity was raised. The exceptions were overruled and the motion was denied by this Court on February 19, 1960. Flota Maritima Browning etc. v. Ciudad de la Habana, D.Md., 181 F.Supp. 301. The allegations of the amended complaint and the facts found from the affidavits and exhibits filed at that time are set out in that opinion and will not be repeated here, except so far as may be necessary to understand the points raised by the pending motion. Additional affidavits and exhibits setting out events both before and after the filing of the libel herein have been submitted.

Intervening libels were filed herein by Hinkins Steamship Agency, Inc., on March 15, 1960, by Nicholas G. Ford on October 11, 1960, and by Maryland Shipbuilding & Drydock Co. on March 13, 1963, all for services rendered to or work done on the Ciudad de la Habana in Baltimore.

*Facts Important to the Pending Motion*

At all material times respondent Banco was an autonomous credit institution chartered under the laws of Cuba. A majority of its stock was owned by the Republic of Cuba and it was controlled by the Cuban government. The purpose of Banco was to lend money and extend credit to promote Cuban trade.

Libelant is a Cuban corporation, but almost all of its stock is owned by a citizen of the United States. As part of a series of transactions referred to in 181 F.Supp. at 303, 304, Banco purchased eight vessels then lying in Halifax harbor—including the vessel now known as the Ciudad de la Habana—from Canadian National (West Indies) Steamships, Ltd., on August 19, 1958. Immediately thereafter, the eight vessels were leased to libelant under an agreement referred to by the parties as the Canadian lease-purchase contract, summarized in 181 F. Supp. at 303.

Libelant caused the Ciudad de la Habana to be brought to Baltimore about September 8, 1958, for repairs and other work by Maryland Shipbuilding & Drydock Co. to prepare the vessel for continued commercial use. Libelant employed Hinkins Steamship Agency as agent for the vessel in Baltimore.

On October 30, 1958, libelant cabled Banco alleging breaches of the Canadian lease-purchase contract, declaring it null and void, and stating that libelant no longer considered itself responsible for any vessel under that contract. Libelant communicated this action to Hinkins, and

1. Banco and the vessel contended (A) that the contracts are non-maritime, and therefore this Court, sitting in admiralty, has no jurisdiction over the subject matter; (B) that because of the appointment of an Interventor for libelant by the Cuban Minister for the Recovery of Misappropriated Property, its officers had no authority to file the libel; and (C) that this Court should decline jurisdiction because both of the parties are Cuban corporations and agreed to the exclusive jurisdiction of the courts of the City of Havana.

on November 13, 1958, Banco requested Hinkins to act for it.

On June 9, 1959, Banco sold to the Republic of Cuba (Estado Cubano) the eight Canadian vessels, including the Ciudad de la Habana and all of the stock of Navegacion Dalpha, S.A. (Dalpha Lines), a wholly owned subsidiary of Banco through which Banco had planned to operate the vessels in trade. Banco thereupon notified Hinkins that as of June 9, 1959, all future instructions would come from Oficina de Fomento Maritimo, an agency of the Cuban government.[2]

The Ciudad de la Habana was seized by the Marshal of this District on June 22, 1959, pursuant to the original libel in this case. After Banco's exceptions and motion, referred to above, were overruled and denied on February 19, 1960, 181 F.Supp. 301, Banco filed an answer to the amended libel and a cross-libel seeking damages from libelant.

More importantly, for the purposes of the present motion, the Republic of Cuba (Estado Cubano) appeared in this case on October 27, 1960, claimed ownership of the motor vessel Ciudad de la Habana, and as such claimant prayed to defend, filed an answer to the amended libel, and filed exceptions to Ford's intervening libel. Neither Banco nor the Republic of Cuba filed any paper herein raising or suggesting the defense of sovereign immunity until May 11, 1962.

Meanwhile, on or about August 3, 1960, libelant commenced an action in rem in the Nova Scotia Admiralty Court against the other seven Canadian vessels which had been purchased by Banco, leased to libelant, and abandoned to Banco by the cable of October 30, 1958.

The seven vessels were arrested on August 3, 1960. On August 11, 1960, the Republic of Cuba appeared under protest on the ground that the Canadian court had no jurisdiction to entertain the action. On August 17, 1960, the Republic of Cuba moved to set aside the writ of summons, warrant for arrest and service on the ground that the Court lacked jurisdiction because of sovereign immunity. The Admiralty Court, Pottier, D.J.A., denied the motion, but its decision was reversed by the Exchequer Court of Canada, Cameron, J., Republic of Cuba v. Flota Maritima Browning de Cuba, S.A., 1962 A.M.C. 496. The libelant appealed to the Supreme Court of Canada, which affirmed the decision of the Exchequer Court, Flota Maritima Browning de Cuba, S. A. v. Republic of Cuba, 1962 S.C.R. 596. The majority opinion by Mr. Justice Ritchie disposed of the appeal on the basis that the defendant ships were to be treated as "the property of a foreign state devoted to public use in the traditional sense", and that the Canadian Court was therefore without jurisdiction to entertain the action. The decision was based on propositions of international law engrafted into the Canadian domestic law.

*Discussion*

*(1) Res Judicata and Collateral Estoppel*

Movant contends that the issue decided by the Canadian Court is the identical issue before this Court; that it was litigated between the same parties; and that the judgment of the Canadian Court is binding upon this Court. Movant apparently contends that the principle of res judicata applies, although collateral estoppel is also discussed in its briefs.[3] Movant concedes that res judicata does

**2.** In January 1960, Dalpha's name was changed to Lineas de Navegacion Mambisas, S.A. Later that month Oficina de Fomento Maritimo was reorganized as Departmento de Fomento Maritimo, and eventually, in December 1960, became a department of Corporacion Nacional de Transportes, later known as Ministerio de Transportes. In June 1961, Empresa Consolidada de Navegacion Maritimo was formed by Resolution No. AEE-85 and

was given all of the ships belonging to the Cuban State (Estado Cubano), all assets of Lineas de Navegacion Mambisas, and other properties. Lineas de Navegacion Mambisas was dissolved.

**3.** To meet the burden of proof resting upon it on these points, movant has submitted copies of the Canadian record and opinion.

not apply to bind the intervening libelants.

■ The difference between res judicata and collateral estoppel was well stated in Mendez v. Bowie, 1 Cir., 118 F.2d 435, 440, cert. den. Rios v. Bowie, 314 U.S. 639, 62 S.Ct. 76, 86 L.Ed. 513, as follows:

> "The effect of a judgment or decree as res judicata depends upon whether the second action or suit is upon the same or a different cause of action. If upon the same cause of action, the judgment or decree upon the merits in the first case is an absolute bar to the subsequent action or suit between the same parties or those in privity with them, not only in respect of every matter which was actually offered and received to sustain the demand or to make out a defense, but also as to every ground of recovery or defense which might have been presented. * * * But if the second case be upon a different cause of action, the prior judgment or decree operates as an estoppel only as to matters actually in issue or points controverted, upon the determination of which the judgment or decree was rendered, and not as to matters or points which might have been litigated and determined."

See also Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069.

■ The conclusiveness of judgments of the courts of foreign countries was discussed by the Supreme Court in Hilton v. Guyot, 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95, and Ritchie v. McMullen, 159 U.S. 235, 16 S.Ct. 171, 40 L.Ed. 133, decided on the same day. Since by the law of Canada a judgment rendered by an American court is allowed full and conclusive effect, comity requires that the doctrine of res judicata applicable to American judgments should be applied

to the Canadian judgment in this case. This Court must determine, therefore, whether the issue before the Canadian court was the same issue which is before this Court. A consideration of the law and the facts shows that it was not.

The question of law before the Canadian court was whether, under the rules of international law which have been made a part of the domestic law of *Canada,* the facts with respect to the seven ships seized as a result of the in rem proceeding in Canada gave rise to a claim of sovereign immunity. The question of law before this Court is whether, under the rules of international law which have been made a part of the domestic law of the *United States,* the facts with respect to the Ciudad de la Habana, seized as a result of the suit in this Court, give rise to a claim of sovereign immunity. Thus, although the issues are closely related, they are not identical.

It appears from a consideration (A) of the Canadian law set out in the opinions of Mr. Justice Ritchie and Mr. Justice Locke in the Supreme Court of Canada in the Canadian case, and (B) of the United States foreign relations law, as set out in the recent opinions of the Supreme Court and other Federal Courts,[4] that the Canadian law and the United States law may not be the same.

Nor are the facts in the two cases identical. True, all eight ships had been purchased by Banco, leased to libelant, abandoned by libelant, and taken over again by Banco. But the seven Canadian ships had never left Halifax Harbor, where they lay idle, and libelant had taken no action with respect to any of them. On the other hand, libelant had moved the Ciudad de la Habana from Canada to Baltimore for repairs and other work necessary to fit it for trade. The opinion of Mr. Justice Locke stated: "There is no evidence as to the use to which the Republic of Cuba intended to put the vessels which it had purchased on June

---

4. The development of the United States law is summarized in the reporter's note to § 72 of the American Law Institute Restatement, The Foreign Relations Law of the United States, Proposed Official Draft, May 3, 1962, approved in substance, subject to editorial revision, by the Institute in May 1962.

9, 1959, and which, since that time, have been anchored in the Harbor of Halifax." The opinion of Mr. Justice Ritchie, concurred in by a majority of the Justices, concluded that it was not necessary to consider what rule would be applied if the vessels were to be used for commercial purposes, since he found that the defendant ships were to be treated as "the property of a foreign state devoted to public use in the traditional sense". The facts with respect to the Ciudad de la Habana permit, if they do not require, a different finding on that point in this case.

■ For each of the foregoing reasons, the decision of the Canadian court is not conclusive of this case, although it should be given respect and persuasive force by a court of the United States.

■ Moreover, it appears to be the law "that foreign judgments in rem are conclusive only as to the property involved, and may be contraverted as to all the grounds and incidental facts on which they profess to be founded". 50 C.J.S. Judgments § 904b, p. 542, citing New York cases. See also 50 C.J.S. Judgments § 897, p. 514.

### (2) The American Doctrine of Sovereign Immunity

The development and present state of the doctrine of sovereign immunity in the foreign relations law of the United States is discussed at length in the reporter's notes to § 68 to § 75, inclusive, of the Draft of the Restatement, The Foreign Relations Law of the United States, cited in note 4 above. It is unnecessary to repeat that discussion here in view of the decision of this Court on the issue of waiver.

■ This Court agrees with the black letter statements of the law contained in §§ 66 to 75. Section 74 deals with the requirement that there be a timely assertion of immunity. Section 75 reads as follows:

"§ 75. Effect of Assertion of Immunity; Law of the United States

"(1) Under the law of the United States an objection made as indicated in § 74 by the government of a state or its accredited diplomatic representative is a statement of contention for disposition by the court or other enforcing agency upon the basis of proof.

"(2) Under the law of the United States, an objection made as indicated in § 74 on behalf of a state by means of a suggestion from the executive branch of the government of the United States is a statement of contention which, by virtue of the exclusive responsibility of the executive branch of the government for the conduct of foreign relations, will be given great weight. Such a suggestion is conclusive as to issues of fact or law which relate to matters within the exclusive competence of the executive branch of the government but is not conclusive as to other issues."

In the case at bar, the executive branch of the government of the United States has made no suggestion with respect to sovereign immunity, although requested to do so by persons acting for the Republic of Cuba. This case is, therefore, distinguishable from such cases as Rich v. Naviera Vacuba, 4 Cir., 295 F.2d 24, aff'g D.C., 197 F.Supp. 710, with stay denied by the Chief Justice.

If it were not for the question of waiver, the issue before this Court would be whether this proceeding arises out of commercial activities that the Republic of Cuba was carrying on outside its own territory, or whether the vessels were dedicated to public use in the traditional sense. See op. cit., § 72. In the present state of the development of the foreign relations law of the United States and of the kaleidoscopic changes in the maritime affairs of the Republic of Cuba, that would not be an easy question to decide. It need not be decided in this case, however, since the Republic of Cuba has waived its right to claim sovereign immunity, by failing to make a timely assertion of such immunity, and by the affirmative action of the Republic of Cuba itself taken in this particular case.

944

### (3) Waiver

The Restatement, op. cit., § 74, states, in pertinent part:

"§ 74. Assertion of Immunity: Law of the United States

"(1) Under the law of the United States, an objection to its exercise of jurisdiction with respect to another state, based on the rule stated in § 68, is timely if made to the court or other enforcing agency before the merits of the controversy have been placed in issue by the other state.

\* \* \* \* \* \*

"(3) A state that fails to make a timely and proper objection under the rules stated in Subsections (1) and (2) of this Section retains the right to assert its immunity from execution upon property not subject to attachment at the time of the failure to make a timely and proper objection."

The Ciudad de la Habana was seized by the Marshal in this case on June 22, 1959. In addition to the pleadings by Banco set out above, the Republic of Cuba (Estado Cubano) itself appeared in this case on Otcober 27, 1960, claimed ownership of the Ciudad de la Habana, and as such claimant prayed to defendant and filed an answer to the amended libel. Neither paper raised any question of sovereign immunity. Nor did the exceptions which the Republic of Cuba filed to Ford's intervening libel.

█ Neither Banco nor the Republic of Cuba filed any paper herein raising or suggesting the defense of sovereign immunity until May 11, 1962. It appears, therefore, that the Republic of Cuba failed to make a timely assertion of sovereign immunity, as required by the cases cited in the comment and reporter's notes to § 74.[5] Although it may assert its immunity from execution upon property not subject to attachment at the time of the failure to make a timely and proper objection, it is too late to assert its immu-

nity with respect to the Ciudad de la Habana, which had been seized by the Marshal long before the objection was raised and was itself the res claimed by the Republic of Cuba at the time the Republic of Cuba filed its answer to the amended libel in this case.

The plea and motion filed by the Czechoslovakian Ambassador on behalf of the Republic of Cuba must be denied.

---

5. In addition to the cases cited by the reporter, see The Sao Vicente, 3 Cir., 295 F. 829, and cases cited therein; also The Uxmal, D.Mass., 40 F.Supp. 258.