363 F.2d 733
 FLOTA MARITIMA BROWNING DE CUBA, SOCIADAD ANONIMA, Appellee,
v.
Dr. Jan SNOBL, Charge d'Affaires ad Interim of the Czechoslovak Socialist Republic, Appellant.
FLOTA MARITIMA BROWNING DE CUBA, SOCIADAD ANONIMA, Appellee,
v.
REPUBLIC OF CUBA, claimant of the Motor Vessel Ciudad de la Habana, Appellant.
FLOTA MARITIMA BROWNING DE CUBA, SOCIADAD ANONIMA, Appellee,
v.
BANCO PARA EL COMERCIO EXTERIOR de CUBA, Appellant.
 Nos. 10263-10265.
 United States Court of Appeals Fourth Circuit.
 Argued November 2, 1965.
 Decided June 24, 1966.
 Certiorari Denied October 10, 1966.
 
 See 87 S.Ct. 82.
 Henry Winestine, New York City (Leonard B. Boudin, New York City, Robert H. Williams, Jr., Baltimore, Md., and Rabinowitz & Boudin, New York City, and Niles, Barton, Gans & Markell, Baltimore, Md., on brief), for appellants.
 William A. Grimes, Baltimore, Md., for appellee.
 Before HAYNSWORTH, Chief Judge, and BOREMAN and BRYAN, Circuit Judges.
 HAYNSWORTH, Chief Judge:
 
 
 1
 Banco Para El Comercio Exterior de Cuba and the Republic of Cuba seek, in addition to other incidental relief, to set aside an order of the United States District Court for the District of Maryland directing the sale, pursuant to Admiralty Rule 12, of the motor vessel Ciudad de la Habana. The source of the controversy and the details of related litigation appear more fully in other opinions.[1]
 
 
 2
 Banco is a Cuban corporation, organized by the Republic of Cuba for the advancement of its foreign trade. Banco's predecessor negotiated with an American citizen, Browning, for an agreement to operate certain vessels then owned by it. To this end Browning, together with other American citizens, formed a Cuban corporation, Flota Maritima Browning de Cuba, Sociadad Anonima, with which Banco entered into two agreements[2] to lease the vessels. Flota Maritima was given an option to purchase the vessels, with previously paid rentals to be applied to the purchase price. Banco retained the right to convert the leases into a contract of sale with a marine mortgage in an amount equal to the unpaid purchase price, computed as if Flota Maritima had exercised its option. Each agreement required Flota Maritima to pay a specified monthly rental which, over the term of the agreement, would equal or exceed the purchase price.
 
 
 3
 In October, 1958, after the motor vessel, Ciudad de la Habana, had been brought to Baltimore for outfitting pursuant to one of the agreements, a dispute arose between the parties over the performance of the contracts, and Flota Maritima delivered the vessels back to Banco which then continued the outfitting of the Habana in Baltimore. On June 9, 1959, allegedly, the vessels were transferred by Banco to the Republic of Cuba. The original libel, filed June 22, 1959, was in rem against the Habana and in personam with a clause of foreign attachment against Banco. An amended libel was filed October 9, 1959. Since June, 1959 the Habana has been in the custody of a United States Marshal in dead anchorage in Baltimore harbor. Unmaintained and unmanned, its condition has deteriorated steadily.
 
 
 4
 In its libel, Flota Maritima sought to recover as damages sums expended in outfitting the vessels and loss of the profits anticipated in the performance of the lease. Banco has filed a cross libel against Flota Maritima, also for breach of the lease-purchase agreement. Cuba has filed a claim as owner of the vessel.
 
 
 5
 After our earlier disposition of the claim of sovereign immunity,[3] Flota Maritima moved for an order, pursuant to Admiralty Rule 12, directing sale of the Habana. Banco moved for cross-security on its cross libel under Admiralty Rule 50, and Cuba moved for an order compelling the Marshal to restore the Habana or to procure a bond securing the cost of restoration. Banco and Cuba appeal the adverse determination of these motions.
 
 
 6
 Appellants interpose again[4] on this appeal the argument that ship lease-purchase agreements are not within the jurisdiction of an admiralty court. Although subjected to recent criticism,[5] the prevailing rule has been that a contract for the sale of a ship is not a maritime contract.[6] The charter of a vessel, however, is maritime.[7] Banco advances the principle that if a contract is not wholly maritime there is no admiralty jurisdiction. While the principle is one of general validity when the non-maritime elements of the contract are substantial and inseparable from the maritime elements,[8] it has long been recognized that where the maritime elements of a contract are susceptible to separate adjudication admiralty jurisdiction may be exercised to that extent. Compagnie Francaise de Navigation a Vapeur v. Bonnasse, 2 Cir., 19 F.2d 777, 779; Eastern Massachusetts Street Ry. Co. v. Transmarine Corp., 1 Cir., 42 F.2d 58; Berwind-White Coal Mining Co. v. City of New York, 2 Cir., 135 F.2d 443.
 
 
 7
 We agree with the District Judge, largely for the reasons expressed by him in a thoughtful opinion,[9] that the maritime aspects of this lease-purchase agreement are separable and that the specific claims may be adjudicated in an admiralty court.
 
 
 8
 In The Ada, 2 Cir., 250 F. 194, the court held that claims arising out of the breach of a charter agreement containing an option to purchase were not cognizable in admiralty. From the three separate opinions filed by the court, however, it is apparent that each judge considered the agreement primarily one for the sale of the vessel. The lease agreement there was limited to a period of six months. During that period the charterer had the use of the vessel upon payment of a fixed sum in specified installments. It also had an option to purchase the vessel at any time for the same sum, the owner agreeing to deposit a bill of sale in escrow as soon as possible. At the time of the breach of the contract, the charterer had in fact exercised his option to purchase, thereby converting the agreement into a contract of sale.
 
 
 9
 Under other lease-purchase agreements, however, claims may arise which are clearly founded upon the lease provisions and which would be within admiralty jurisdiction. The primary opinion in The Ada clearly recognized this possibility.
 
 
 10
 In this case the agreements were to extend for periods of seven and fifteen years. The economic compulsion to exercise the purchase option is clearly not so great where the cost of use for a long period approximates purchase price as it is where the cost of use for six months is the same as the purchase price. Nor is there an indication that the rentals here were so unreasonably high as to suggest a disguised sale. Although the contract could have been converted into a sale at the option of either party, up to the time of its termination it had not been. Unlike the contract in The Ada, at the time the libel was filed, the parties had operated only under the lease provisions and the purchase-sale options were unexercised. The character of the contract was thus fixed, as between the parties, as a charter.
 
 
 11
 The District Court's opinion rested in part upon an interpretation of the Canadian agreement which gave the lessee a right to terminate at any time without penalty. That interpretation is challenged here, but the absence of such a provision does not mean that the lease provisions must be disregarded and the agreement treated as a contract of sale.
 
 
 12
 The damages sought are for loss of the profits of operating the vessels and for certain sums expended in outfitting the ship. The maritime character of contracts to operate[10] or repair[11] a vessel is clear. It would be an unduly strict limitation of traditional admiralty jurisdiction to hold that power to deal with these maritime claims was lost merely because they were based upon an agreement which contained dormant, non-maritime as well as maritime provisions.[12] Where such non-maritime provisions are contingent and have never been given effect, it is not difficult to separate them from the contract and permit separate adjudication in admiralty of the maritime claims arising out of the contract.
 
 
 13
 Objection to the order of sale on the basis of asserted lack of admiralty jurisdiction, with which we have dealt, is supplemented by a reiteration of the claim of sovereign immunity. That claim was first advanced on behalf of the Republic of Cuba long after it had entered a general appearance. It was denied by the District Court.[13] We affirmed on the ground that the claim in both its jurisdictional and execution aspects had been effectively waived.[14] The Supreme Court denied leave to file a petition for a writ of prohibition or mandamus.[15]
 
 
 14
 The Czechoslovakian Ambassador, on behalf of the Republic of Cuba, now undertakes a fragmentation of the claim of execution immunity. We have held only, he says that a claim of the vessel's immunity from arrest and continued detention may not be asserted; immunity from sale, he contends, is another question.
 
 
 15
 We think not. When Banco and Cuba entered their general appearance the claim of sovereign immunity from execution was waived; there were no explicit or implicit limitations. We held previously that because seizure was for the purpose of execution as well as jurisdiction, immunity in both aspects was waived when the general appearance was entered without reservation.
 
 
 16
 In its execution aspect, the arrest of the vessel, and its subsequent detention, were solely for the purpose of securing payment of the claim out of the proceeds of a sale or out of a bond if the owner obtains the vessel's release. For execution purposes, detention of the vessel, or the bond which stands in her stead, is meaningful only in terms of its ultimate conversion into money for the benefit of the libellant. The things are inseparable, and a general waiver of immunity from execution forecloses an assertion of immunity during any stage of the proceedings.
 
 
 17
 The immunity claim, as an objection to an order of sale, was fully adjudicated when the case was here before.
 
 
 18
 There are other objections to the order of sale and appeals from denial of Banco's motion for cross security and of Cuba's motion to require the United States Marshal to restore the vessel to her former condition. We affirm the District Court in all of those respects for reasons which sufficiently appear in its opinion of August 16, 1965.[16]
 
 
 19
 The order of sale is affirmed, and this Court's order staying the sale during the pendency of these appeals is dissolved. A certified copy of the judgment in lieu of a mandate will issue forthwith.
 
 
 20
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Flota Maritima Browning, etc. v. Motor Vessel Ciudad de la Habana, 4 Cir., 335 F.2d 619, affirming, 218 F.Supp. 938; Flota Maritima Browning, etc. v. La Ciudad de la Habana, D. Md., 181 F. Supp. 301
 
 
 [2]
 One agreement, the "English Lease Purchase Contract," covers six vessels for a term of fifteen years. The other, the "Canadian Lease Purchase Contract," relates to eight vessels purchased by Banco from Canadian National (West Indies) Steamships, Ltd. and three other vessels owned by Banco. It extended for a term of seven years and included the Ciudad de la Habana, formerly the Canadian Challenger. The libel pursuant to which the Habana was seized contains a cause of action based upon an alleged breach of each contract
 
 
 [3]
 Flota Maritima Browning, etc. v. Motor Vessel Ciudad de la Habana, 4 Cir., 335 F.2d 619, affirming, 218 F.Supp. 938
 
 
 [4]
 This argument was rejected in Flota Maritima Browning, etc. v. La Ciudad de la Habana, D. Md., 181 F.Supp. 301, and no appeal was taken. It was not advanced when the case was here before. Unquestionably, however, lack of jurisdiction over the subject matter may be raised at any time
 
 
 [5]
 Flota Maritima Browning, etc., supra note 4; Gilmore & Black, Admiralty, 24-25; Note, the Law of Admiralty and Ship Sale Contracts, 6 Stan.L.Rev. 540
 
 
 [6]
 The Ada, 2 Cir., 250 F. 194; Grand Banks Fishing Co. v. Styron (the Caracara), D. Me., 114 F.Supp. 1; Hirsch v. The San Pablo, D. Fla., 81 F.Supp. 292. Similarly, an admiralty court does not have jurisdiction to compel specific performance of a contract to purchase a vessel. Rea v. The Eclipse, 135 U.S. 599; The Guayaquil, S.D.N.Y., 29 F.Supp. 578
 
 
 [7]
 See J. B. Effenson Co. v. Three Bays Corp., 5 Cir., 238 F.2d 611; Cory Bros. & Co. v. United States, 2 Cir., 51 F.2d 1010; Gronvold v. Suryan, W.D.Wash., 12 F.Supp. 429
 
 
 [8]
 The Ada, 2 Cir., 250 F. 194; Compagnie Francaise de Navigation a Vapeur v. Bonnasse, 2 Cir., 19 F.2d 777; D. C. Andrews & Co. v. United States, 124 F.Supp. 362, 129 Ct.Cl. 574. But see. Sword Line, Inc. v. United States, 2 Cir., 228 F.2d 344, aff'd, 351 U.S. 976, 76 S.Ct. 1047, 100 L.Ed. 1493 (jurisdiction in admiralty over charterer's suit in quasi contract to recover excess charges); Luckenbach S. S. Co. v. Coast Mfg. & Sup. Co., S.D.N.Y., 185 F.Supp., 910, 916 (incidental to admiralty elements and non-separable); Gronvold v. Suryan, supra note 7 (incidental elements and non-separable). Where the non-maritime elements of a contract are considered separable from those maritime, an admiralty court is ousted of jurisdiction over the former. Pillsbury Flour Mills Co. v. Interlake S. S. Co., 2 Cir., 40 F.2d 439, cert. denied, 282 U.S. 845, 51 S.Ct. 24, 75 L.Ed. 750; Armstrong Cork Co. v. Farrell, E.D.Pa., 81 F.Supp. 848; The Ciano, E.D.Pa., 63 F.Supp. 892
 
 
 [9]
 Flota Maritima Browning, etc. v. La Ciudad de la Habana, 181 F.Supp. 301
 
 
 [10]
 See note 7, supra
 
 
 [11]
 New Bedford Drydock Co. v. Purdy, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482; The Scorpio, 5 Cir., 181 F.2d 356
 
 
 [12]
 See Eastern Massachusetts Street Ry. Co. v. Transmarine Corp., 1 Cir., 42 F.2d 58
 
 
 [13]
 218 F.Supp. 938
 
 
 [14]
 335 F.2d 619
 
 
 [15]
 Duda v. United States District Court, 380 U.S. 970, 85 S.Ct. 1347, 14 L.Ed. 2d 282
 
 
 [16]
 Flota Maritima Browning de Cuba, Sociadad Anonima v. Motor Vessel Ciudad de la Habana, D.C., Md., 245 F.Supp. 205. We do not grant the motions to dismiss the appeals because of the substantial effect a sale of the vessel may have upon the ultimate rights of the parties
 
 
 ALBERT V. BRYAN, Circuit Judge (dissenting):
 
 21
 For the reasons stated in my initial dissent in this case Flota Maritima Browning De Cuba, etc., v. Motor Vessel Ciudad De La Habana, 335 F.2d 619, 631 (1964), I do not think there has been a waiver of execution immunity. Further, I find the order of sale inequitably oppressive in the circumstances here.
 
 
 22
 The libelants (using the term infra to include both Flota and the intervenors) have procured a sale of the vessel without one tittle of evidence to prove their claims. Equally indefensible, the vessel now ordered sold is admittedly not owned by Banco, the only party charged by the libelants with creating the alleged liability, but is owned by the Republic of Cuba. This is apparently excused by the District Court with the explanation that Cuba owns Banco, yet in an earlier opinion in this case, 218 F.Supp. 938, 940 (1963), the District Court found that Banco was an "autonomous" entity in which Cuba was only the majority stockholder.
 
 
 23
 The sale is ordered under Supreme Court Admiralty Rule 12. The power of sale there given is conditioned upon the owner's "unreasonable neglect to make any * * * application" to have the ship delivered to him. Here the owner's "neglect", if it be such, was hardly "unreasonable." There were substantial defenses, including the pleas of sovereign immunity, albeit they were eventually overruled. Under the present facts the equities of Cuba and the libelants are at least equal. A sale will be an irretrievable step, inflicting irreparable injury upon Cuba, even if she wins the case. Certainly, Cuba's success is a possibility which should not be ignored in determining whether to sell. The right under Rule 12 to sell is discretionary, requiring a balancing of equities, and I think this discretion is abused by a pretrial sale.
 
 
 24
 Proctors for Banco and Cuba suggested to us that the ship — already detained for more than six years — would not deteriorate beyond restoration, as a live ship, before expeditious hearings of the libel and intervening petitions could be concluded. Indeed, they suggested that the scrap value of the Ciudad De La Habana would exceed the libelants' claims against her. If either of these assertions is sustainable, then the libelants surely are not entitled to the sale, for the retention of the ship would not prejudice them. The libelants should shoulder the burden to prove that the value of the ship is now, or will be upon the final disposition of the suit, insufficient to respond to the genuine claims of the libelants.
 
 
 25
 The most advisable solution of the problem is an immediate trial of the cause. To repeat, I think no sale at all is permissible, and certainly not one without a trial of the case on the merits.